1

2

3

4

5

6                       **UNITED STATES DISTRICT COURT**

7                    **WESTERN DISTRICT OF WASHINGTON**

8  | HOLLAND AMERICA LINE, N.V. d/b/a | CASE NO.:
   | HOLLAND AMERICA LINE, N.V., L.L.C.,
9  | a Washington Limited Liability Corporation;
   | SEABOURN CRUISE LINE, LTD., a | **COMPLAINT FOR DAMAGES**
10 | Washington Limited Liability Corporation;
   | and PRINCESS CRUISE LINES, LTD., d/b/a
11 | PRINCESS CRUISES, a California Limited | <u>**Causes of Action**</u>
   | Liability Corporation,              |  1. Breach of Contract
12 |                                     |  2. Breach of Implied-in-Fact/Quasi Contract
   |              Plaintiff,             |  3. Breach of the Implied Covenant of
13 |                                     |     Good Faith and Fair Dealing
   | vs.                                 |  4. Unjust Enrichment/Restitution
14 |
   | ORIENT DENIZCILIK TURIZM SANAYI
15 | VE TICARET, A.S., d/b/a SEA SONG
   | TOURS, a Turkish Corporation; KAREN
16 | FEDORKO SEFER, an individual; and DOES
   | 1 through 20, inclusive,
17 |
   |              Defendants.
18 |

19

20         COMES NOW the Plaintiffs HOLLAND AMERICA LINE, N.V., SEABOURN CRUISE

21 LINE, LTD. and PRINCESS CRUISE LINES, LTD., by and through its attorneys, to bring this

22 Complaint for damages against the above-named defendant, and to demand a jury trial on all

23 issues against each defendant, alleging as follows:

24 / / /

25 / / /

26 / / /

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

**PARTY ALLEGATIONS**

1.      Plaintiff HOLLAND AMERICA LINE, N.V., (hereafter "HAL") is a limited liability corporation duly organized and operating under the laws of the State of Washington. HAL is a full-service cruise line entity headquartered at 450 Third Avenue West, Seattle, WA 98119, USA, and HAL's fleet of 14 ships offers more than 500 annual cruises to 415 ports of call in 98 countries, territories, and/or dependencies, which includes ports of call in Turkey.

2.      Plaintiff SEABOURN CRUISE LINE, LTD., (hereafter "SEABOURN") is a limited liability corporation duly organized and operating under the laws of the State of Washington. HAL is a full-service cruise line entity headquartered at 450 Third Avenue West, Seattle, WA 98119, USA, and SEABOURN's fleet of 5 ships taking passengers to more than 500 annual ports of call on seven continents, which includes ports of call in Turkey.

3.      Plaintiff PRINCESS CRUISE LINES, LTD., (hereafter "PCL") is a limited liability corporation duly organized and operating under the laws of the State of California. PCL is a full-service cruise line entity headquartered in Bermuda with its Principal Place of Business in California at 24305 Town Center Drive, Santa Clarita, CA 91355, USA, and PCL's fleet of 17 ships taking more than one million passengers to more than 300 annual ports of call on six continents, which also includes ports of call in Turkey.

4.      HAL, SEABOURN & PCL (hereafter collectively "the Plaintiffs" and/or "HAL, SEABOURN & PCL") are both wholly owned subsidiaries of the Carnival Corporation & PLC, the largest cruise line company in the world, which is headquartered at 3655 N.W. 87 Avenue, Miami, Florida 33178, USA.

5.      Defendant ORIENT DENIZCILIK TURIZM SANAYI VE TICARET, A.S., d/b/a SEA SONG TOURS, (hereafter "Defendant SST" and/or "SST") is Turkish corporate entity of an unknown type duly organized and operated under the laws of Turkey. Defendant SST is a Turkish travel agency that is headquartered at Binbirdirek Mah. Peykhane Caddesi No: 33, 34122 Fatih/Istanbul, Turkey.

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

6. Defendant KAREN FEDORKO SEFER (hereinafter "Defendant SEFER") is the Owner and President of Defendant SST. Defendant SEFER has performed this role for Defendant SST for approximately twelve years, and at all relevant times hereto.

7. The Plaintiffs are unaware of the true names and capacities of the Defendants sued herein as DOES 1-20, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to insert the true names and capacities of these Defendants when their true names are ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are liable to Plaintiffs for all or some of the acts, events, and occurrences alleged herein as a result of the fictitiously named Defendants relationship to all named Defendants, or by their participation in the acts, events or occurrences described herein.

8. Defendant SST, Defendant SEFER, and DOES 1 through 20, inclusive, may be collectively hereafter referred to as "Defendants."

9. Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendants, and each of them, were the partners, agents, servants, employees, or joint venturers of each other co-defendant, and were acting within the scope of this partnership, agency, employment or joint venture, in undertaking the actions described herein.

## JURISDICTIONAL ALLEGATIONS

10. This Court is vested with original subject matter jurisdiction under 28 U.S.C. 1331 and the general maritime law of the United States under 28 U.S.C. 1333, subd., (1). 28 U.S.C. 1331; and 28 U.S.C. 1333, subd., (1). Jurisdiction is also vested in this Court under 28 U.S.C. 1332 as a civil action where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and is between citizens of a State and citizens or subjects of a foreign state not domiciled in the same state. 28 U.S.C. 1332, subd., (a)(2).

/ / /

/ / /

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

11.     A Washington Court may exercise personal jurisdiction over a nonresident Defendant to the extent allowed under the state and federal Constitutions. RCW 26.50.240 and RCW 4.28.185.   Defendants were conducting business witin the State of Washington.  Further absent one of the traditional bases for personal jurisdiction (i.e., presence, domicile, and/or consent), due process requires that Defendants have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 US 310, 316 (1945). Minimum Contacts within the forum state may give rise to two types of personal jurisdiction: specific or general jurisdiction. *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. 408, 414-15 (1984).

12.     Whether the Court can exercise specific or general jurisdiction depends on the nature and quality of the defendant's "contact" with the forum state. *HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1167. A nonresident defendant is subject to general jurisdiction if he has substantial, continuous, and systematic contacts with the forum state. Id. If established, general jurisdiction can be exercised as to any cause of action, even if unrelated to the defendant's activities within the state. Defendants did not have systematic and continuous contacts within Washington sufficient for general personal jurisdiction.

13.     Specific jurisdiction is limited to the claims arising out of or related to the defendant's forum related activities. *Doe v. National Medical Services*, 974 F2d 143, 145 (10th Cir. 1992); *Aviles v. Kunkle*, 978 F2d 201, 204 (5th Cir. 1992). In order for the Court to exercise specific jurisdiction: "1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be reasonable." *Jones v. Williams*, 660 F.Supp.2d 1145, 1149 (N.D. Cal. 2009); citing *Roth v. Marquez*, 942 F.2d 617, 620–21 (9th Cir.1991). Plaintiffs bear the burden to prove the first two (2) factors. *Burger King Corp. v. Rudzewicz*, (1985) 471 US 462, 477-478; see also

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

*Boschetto v. Hansing* (9th Cir. 2008) 539 F.3d 1011, 1016. As Plaintiffs have established both factors below, the burden of proof shifts to Defendants to show that the exercise of jurisdiction would be unreasonable. *Id*.

14.     To prove the first element – purposeful availment – plaintiff must show "purposeful direction," defined by the "three-part 'effects' test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984)." *Jones*, 660 F.Supp.2d at 1149-1150. The defendant must have: 1) committed an intentional act, 2) expressly aimed at the forum state, which 3) causes harm that the defendant knew was likely to be suffered in the forum state. *Id*. Here, Defendants intentionally acted to consummate yearly transactions with Plaintiffs in the forum State of Washington and a domiciled resident thereof under the benefits and protections of Washington's law. Each year, the Defendants expressly directed their activities at the forum state of Washington via interstate commercial activity (i.e., facsimile, electronic mail, and telephonic communications with a Washington Corporation) to form a contract with Plaintiffs. Defendants failure to pay certain commissions owed under the contracts caused harm that the Defendants knew was likely to be suffered by Plaintiffs in the forum state. Thus, the exercise of personal jurisdiction is reasonable in the forum state of Washington because Defendants have purposefully availed themselves of the benefits and protections of Washington's laws through intentional and direct action.

15.     To prove the second element – whether the instant claim arises out of the nonresident's forum-related activities – many courts, including the Ninth Circuit, follow a "but for" test. As Plaintiffs would not have suffered losses "but for" defendant's activities, this element is satisfied. *Ballard v. Savage*, 65 F3d 1495, 1500(9th Cir. 1995); see also *Prejean v. Sonatrach, Inc.*, 652 F2d 1260, 1270 (5th Cir. 1981). Here, all of Plaintiff's claims arise directly out of Defendants execution of a contract and defective performance (i.e., forum related contractual activities). *Sullivan v. Ford Motor Co.*, 16-CV-03505-JST, 2016 WL 6520174, at *3 (N.D. Cal. Nov. 3, 2016), citing *Bristol-Myers Squibb Co. v. Super. Ct.*, 377 P.3d 874, 885 (Cal. 2016)

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

1   (requiring a substantial nexus between non-resident defendant's forum activities and Plaintiff's

2   claim). Thus, Plaintiffs have met their burden of establishing that Defendants' contacts within

3   Washington gave rise to the claims asserted in Plaintiffs' complaint for damages, and the

4   reasonable exercise of jurisdiction.

5        16.    As it has been established that the defendants purposefully availed themselves of

6   the privilege of conducting activities in the forum state, the Court's exercise of personal

7   jurisdiction is presumptively reasonable, and the burden shifts to the defendant to present a

8   compelling case that the exercise of jurisdiction would, in fact, be unreasonable. *Lee v. City of Los*

9   *Angeles* 250 F.3d 668, 695 (2001). Here, the exercise of personal jurisdiction is reasonable (i.e.,

10  comports with traditional notions of fair play and substantial justice) because Defendants

11  understood that they could be sued in Washington after reaching into the forum state and forming

12  yearly contracts under the protections and benefits of its laws. *Schwarzenegger v. Fred Martin*

13  *Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (holding after a Plaintiff satisfied the first two

14  prongs, "the burden then shifts to the defendant[s] to 'present a compelling case' that the exercise

15  of jurisdiction would not be reasonable.")

16       17.    Venue is proper in this District pursuant to 28 U.S.C. 1391(b) because the County

17  of King is the judicial district where the subject contract was entered into and where Defendants

18  incurred an obligation to perform certain contractual duties to pay Plaintiffs certain commissions.

19  The County of King is where a substantial part of the events, omissions, and/or property giving

20  rise to the claim occurred and defendants are subject to this Court's personal jurisdiction with

21  respect to this action. 28 U.S.C. 1391, subd., (b) (2-3).

22       18.    Plaintiffs are seeking damages in excess of the jurisdictional minimum of this

23  Court, according to proof after a trial by jury on all issues.

## **FACTUAL ALLEGATIONS**

25       19.    Since approximately 2005, Defendant SST has contracted with the Plaintiffs on a

26  yearly basis to operate a shopping concession at Turkish ports that are called upon by the

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

1  Plaintiffs' cruise ship vessels, and said agreements were referenced as that year's "Shopping
2  Agreement."

3      20.    Each Shopping Agreement was more or less identical in that the Plaintiffs
4  contractually promised to extol the quality and uniqueness of Defendant SST's wares to its cruise
5  line passengers prior to mooring in Turkey, and in exchange, Defendant SST contractually
6  promised to pay the Plaintiffs either a percentage of its shopping commissions upon meeting sales
7  thresholds or Defendant SST paid the Plaintiff's a guaranteed sum of money.

8      21.    Attached hereto as Exhibit "A" are true and correct copies of the Plaintiffs' and
9  Defendant SST's Shopping Agreements for 2005, 2006, 2007, 2008, 2013, 2014, and 2015.

10     22.    Each year, the Plaintiffs offered a Shopping Agreement to Defendant SST, and
11 Defendant SST either accepted said agreement expressly or impliedly by conduct.

12     23.    Each year, the promises remained the same: the Plaintiffs contractually promised to
13 extol the quality and uniqueness of Defendant SST's wares to its cruise line passengers prior to
14 mooring in Turkey, and in exchange, Defendant SST contractually promised to pay the Plaintiffs
15 either a percentage of its shopping commissions upon meeting sales thresholds or Defendant SST
16 paid the Plaintiff's a guaranteed sum of money.

17     24.    Each year, the Plaintiffs did all of the significant things that the contract required it
18 to do, which included, but was not limited to, the following acts:

19     a.   Distributed promotional materials to each cruise line passenger's cabin that contained
20          merchant descriptions and maps for Defendant SST's merchants;

21     b.   Recommended Defendant SST's merchants in all communications with the Plaintiffs'
22          cruise line passengers regarding Turkish ports of call;

23     c.   Played Defendant SST's "shopping video" that encouraged the Plaintiffs' cruise line
24          passengers' patronage at Defendant SST's merchants stores in Turkey;

25     d.   Allowed time for "shopping stops" at Defendant SST's merchants in Turkish ports of
26          call after the Plaintiffs' cruise line passengers' shore excursions in Turkey;

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

e. Abstained from the promotion of other Turkish port merchants whose goods were similar to Defendant SST's merchants to the Plaintiffs' cruise line passengers; and

f. Permitted Defendant SST to tell the Plaintiffs which Turkish port merchants Plaintiffs could send its cruise line passenger customers to under the shopping agreements.

25. If that year's contract was not contemporaneously signed, the Plaintiffs and Defendant SST understood that a contract impliedly governed their conduct due to a history of prior dealings. Under Washington law, a contract implied in fact, and in law/quasi contract, exists where its existence and terms are manifested by conduct. Here, an implied agreement between Plaintiffs and Defendants was "founded upon a meeting of minds, which [. . .] is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding" because they continued to do business together even if that year's contract was not contemporaneously signed. *Hercules Inc. v. United States*, 516 U.S. 417, 424 (1996)*, citing Baltimore & Ohio R. Co. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 426–427, 67 L.Ed. 816 (1923), *Johnson v. Nasi*, 50 Wash.2d 87, 91, 309 P.2d 380 (1957) (citing Ross v. Raymer, 32 Wash.2d 128, 137, 201 P.2d 129 (1948)). *Young v. Young* 164 Wn. 2d 477, 483-86, 191 P.3d 1258 (2008).

26. Under Washington law, a course of conduct can show the existence of a contract implied in fact and in law or a quasi contract. A quasi contract is not based on a contract but instead "arises from an implied duty of the parties," not based on consent or agreement but on equitable principles calling for the prevention of unjust enrichment. *Heaton v. Imus*, 93 Wn.2d 249, 252, 608 P.2d 631 (1980). Recovery in quasi contract is appropriate when money, property, or some other form of benefit is placed in one person's possession under such circumstances that "in equity and good conscience that person ought not to retain it." *Family Medical Bldg., Inc. v. State, Dept. of Social & Health Services*, 37 Wn.App. 662, 669–70, 684 P.2d 77 (1984), affirmed in part and reversed in part at 104 Wn.2d 105, 702 P.2d 459 (1985). Here SST benefited from services provided by Plaintiff's as it had done for many years under the same terms and

PLAINTIFF'S COMPLAINT FOR DAMAGES     Page **8** of 15
CASE NO.

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

1   conditions. It would be unjust for SST to retain the benefits of those services without fulfilling its

2   obligations pursuant to their implied agreement. A quasi contract should be found to exist between

3   the parties. *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wash.App. 151, 160, 810 P.2d 12

4   (1991) ("Unjust enrichment occurs when one retains money or benefits which in justice and equity

5   belong to another."). *Bill v. Gattavara*, 34 Wash.2d 645, 650, 209 P.2d 457 (1949) (stating "the

6   terms 'restitution' and 'unjust enrichment' are the modern designations for the older doctrine of

7   'quasi contracts.' "); *State v. Cont'l Baking Co.*, 72 Wash.2d 138, 143, 431 P.2d 993 (1967) (" 'If

8   the defendant be under an obligation, from the ties of natural justice, to refund;  the law implies a

9   debt, and gives this action, founded in the equity of the plaintiff's case, as it were upon a contract,

10  (quasi ex contractu) .' ") (internal quotation marks omitted) (quoting *State ex rel. Employment Sec.*

11  *Bd. v. Rucker*, 211 Md. 153, 157-58, 126 A.2d 846 (1956) (quoting *Moses v. Macferlan*, 2 Burr.

12  1005, 97 Eng. Rep. 676, 678 (1760))).

13      27.     Still further the relationship between Plaintiffs and SST amounted to a contract

14  implied in fact. The implication between the parties given the course of conduct was Plaintiffs

15  provided services to SST for which SST expected to pay. By implication these circumstances

16  showed a mutual intention between the parties to contract with each other. The services were

17  rendered by the Plaintiffs under such circumstances as to indicate that they expected to be paid for

18  them and SST expected, or should have expected, to pay for them. *Johnson v. Nasi*, 50 Wash.2d

19  87, 91, 309 P.2d 380 (1957) (citing *Ross v. Raymer*, 32 Wash.2d 128, 137, 201 P.2d 129 (1948)).

20  *Young v. Young* 164 Wn. 2d 477, 483-86, 191 P.3d 1258 (2008).

21      28.     Neither party to each year's shopping agreement <u>ever</u> recanted or reneged on their

22  implied promises/contractual duties to perform at any point in time. The Plaintiffs always upheld

23  its contractual promises to Defendant SST and performs services beneficial to or at the request of

24  SST to their benefit by directing their cruise line passengers to SST's merchants. The net

25  commissions and/or a guaranteed payment owed to the Plaintiffs under that year's shopping

26  agreement was always paid by Defendant SST. Given the benefits conferred to SST and the

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

1  standard of practice between the parties over the many years of their contractual relationship, SST

2  should be required to fulfil its obligations pursuant to its implied duties to prevent its unjust

3  enrichment. *Chandler v. Washington Toll Bridge Authority*, 17 Wn.2d 591, 602, 604, 137 P.2d 97

4  (1943).

5      29.      For example, in 2013, that year's Shopping Agreement was not signed by until

6  October 14, 2013, and at that time <u>approximately eighty percent of the Plaintiffs' cruises to Turkey

7  had already occurred</u>. Yet, Defendant SST paid the Plaintiffs as though an express contract bound

8  the parties for the entirety of 2013.

9      30.      Attached hereto as Exhibit "B" to Plaintiffs' Complaint is a true and correct copy of

10  emails exchanged in February of 2014 between Defendant SEFER and Mark Barnard (Plaintiffs'

11  Onboard Revenue Manager) that related to Defendant SST's payment of $316,734.56 net

12  commissions due to the Plaintiffs under the 2013 Shopping Agreement.

13      31.      Moreover in 2014, as was the case for the vast majority of the time under the 2013

14  Shopping Agreement, the Plaintiffs and Defendants acted in accordance with the existence of a

15  binding written contract in 2014 when no signed writing controlled that year's Shopping

16  Agreement.

17      32.      Attached hereto as Exhibit "C" to Plaintiffs' Complaint is a true and correct copy of

18  emails sent throughout 2014 from Sezai Ozdemir (Defendant SST's Financial Controller) to

19  Defendant SEFER and the Plaintiff's employees relating to the juxtaposition of Defendant SST's

20  expected 2014 shopping sales with its actual 2014 shopping sales and a comparison of the net

21  commissions to Defendant SST's guaranteed payment amount of $631,000.00.

22      33.      Attached hereto as Exhibit "D" to Plaintiffs' Complaint is a true and correct copy of

23  emails sent in November of 2014 from Defendant SEFER to Plaintiff's employees regarding

24  Defendant SST's owing $790,229.29 under the 2014 shopping agreement to the Plaintiffs.

25  / / /

26  / / /

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

## FIRST CAUSE OF ACTION

### (For Breach of Contract)

### (Against Defendants SST, SEFER, and DOES 1 through 20)

34.     Plaintiff incorporates and re-alleges every allegation set forth in paragraphs 1 through 33 inclusive, as though fully set forth herein.

35.     In 2015, the Plaintiffs and Defendant SST carried on with their respective contractual obligations the same as in 2014 and 2013. In 2015, the Plaintiffs' promotions of Defendant SST's goods to the Plaintiffs' cruise line passengers was exchanged for Defendant SST's payment of net commissions and/or a guaranteed payment earned from shopping sales at Turkish ports. In 2015, the Plaintiffs did all the significant things that the Plaintiffs' were required to do.

36.     Here, as noted above the Plaintiffs' and Defendant SST assented to the 2015 shopping agreement by their unambiguous implied conduct because the parties continued to do business together in 2013, 2014, and 2015, even if that year's contract was not contemporaneously signed. The Plaintiffs' and Defendant SST's relationship across many years meant the parties would understand silence in the face of an offer to be acceptance as a course of continued business conduct.

37.     Further, under Washington law, acceptance of the 2015 shopping agreement may be inferred from Defendant SST's receipt of benefits from Plaintiff's as set out in the 2015 shopping agreement. This created both contracts implied in fact and in law or quasi contract. *Young v. Young* 164 Wn. 2d 477, 483-86, 191 P.3d 1258 (2008) and *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wash.App. 151, 160, 810 P.2d 12 (1991). Here, Defendant SST voluntarily accepted the benefits of the Plaintiff's promotions as its merchants made sales to the Plaintiffs' cruise line passengers that would not have otherwise occurred. Defendant SST retained "the benefit of [the] transaction," and became obligated to perform the remainder of its obligations under the contract to either pay the Plaintiffs' the net commissions or the guarantee owed under

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

1    the 2015 Shopping Agreement.

2          38.      Defendant SST breached the 2015 Shopping Agreement by failing to make

3    payments owed under the 2015 Shopping Agreement.

4          39.      As a direct and proximate result of Defendant SST's breach of this contract, the

5    Plaintiffs were harmed because each suffered extreme financial losses. Plaintiffs pray for relief as

6    set forth below for the recapture of their respective losses.

7                     **SECOND CAUSE OF ACTION**

8                   (**For Breach of Implied-in-Fact Contract**)

9            (**Against Defendants SST, SEFER, and DOES 1 through 20**)

10          40.      Plaintiff incorporates and re-alleges every allegation set forth in paragraphs 1

11    through 39 inclusive, as though fully set forth herein.

12          41.      By their actions, words, and conduct, Defendant SST created a contract implied-in-

13    fact, pursuant to the terms of the Shopping Agreement it had maintained with the Plaintiffs of

14    many years for 2015. Through the multi-year history of prior dealings, Defendant SST knew or

15    had reason to know that monies earned from commissions were due to the Plaintiffs' exclusive

16    promotions of its merchants, and that the Plaintiffs performed said promotions as consideration

17    exchanged for Defendant SST's payment of sales commissions to the Plaintiffs.

18          42.      Defendant SST breached the implied in fact 2015 Shopping Agreement by failing

19    to make payments of the net commissions or the guarantee owed under the 2015 Shopping

20    Agreement.

21          43.      As a direct and proximate result of Defendant SST's breach of this implied

22    contract, the Plaintiffs were harmed because each suffered extreme financial losses. Plaintiffs pray

23    for relief as set forth below for the recapture of their respective losses.

24    / / /

25    / / /

26    / / /

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

## THIRD CAUSE OF ACTION

### (For Breach of Implied Covenant of Good Faith and Fair Dealing)

### (Against Defendants SST, SEFER, and DOES 1 through 20)

44.     Plaintiff incorporates and re-alleges every allegation set forth in paragraphs 1 through 43 inclusive, as though fully set forth herein.

45.     In every contract or agreement there is an implied promise of good faith and fair dealing by each party not do anything to unfairly interfere with the right of any other party to receive the intended benefits of the contract. *Nova Contracting, Inc. v. City of Olympia,* No. 48644-0-11*(*Washg Ct. App. Apr. 18, 2017), *Badgett v. Secuirty Bank,* 116 Wn. 2d 563, 569. 807 P. 2d 356 (1991) and *State v. Trask,* 91 Wn. App. 253, 272-73, (57 P.2d 781 (1998)).

46.     In 2015, the Plaintiffs and Defendant SST carried on with their respective contractual obligations the same as in 2014 and 2013. In 2015, the Plaintiffs' promotions of Defendant SST's goods to the Plaintiffs' cruise line passengers was exchanged for Defendant SST's payment of net commissions and/or a guaranteed payment earned from shopping sales at Turkish ports. In 2015, the Plaintiffs did all of the significant things that the Plaintiffs' were required to do.

47.     At the close of 2015, as the Plaintiffs had promoted Defendant SST's wares to its cruise line passengers, there were no remaining conditions to delay the triggering of Defendant SST's duty to make the agreed upon payments. However, Defendant SST was not happy about being outbid by another touring company for the Plaintiff's 2016 Shopping Agreement, and failed to make said payments.

48.     As Defendant SST's duty to perform was triggered, Defendant SST breached the 2015 Shopping Agreement and unfairly interfered with the Plaintiffs' rights to receive benefits under the contract because after the Plaintiffs' had performed as obligated, Defendant SST failed to make payments of the net commissions or the guarantee owed under the 2015 Shopping Agreement.

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

1    49.    As a direct and proximate result of Defendant SST's breach of this contract, the

2    Plaintiffs were harmed because each suffered extreme financial losses. Plaintiffs pray for relief as

3    set forth below for the recapture of their respective losses.

4    **FOURTH CAUSE OF ACTION**

5    **(For Unjust Enrichment/Restitution/Quasi Contract)**

6    **(Against Defendants SST, SEFER, and DOES 1 through 20)**

7    50.    Plaintiff incorporates and re-alleges every allegation set forth in paragraphs 1

8    through 49 inclusive, as though fully set forth herein.

9    51.    In 2015, the Plaintiffs' expended substantial time, energy, and effort on

10   Defendants' behalf as it promoted Defendant SST's merchants to its onboard cruise line

11   passengers. Defendant SST received said benefit from the Plaintiffs in the form of additional

12   revenues.

13   52.    Defendants have been unjustly enriched by their retention of monies owed to the

14   Plaintiffs' from shore sales earned by virtue of the Plaintiffs' promotions identified above. It

15   would be inequitable and unjust for Defendants to continue to retain those amounts.

16   53.    Accordingly, the Plaintiffs seek an award of all benefits that have been conferred on

17   Defendants and by which they have been unjust enriched in an amount to be proven trial.

18   **PRAYER FOR RELIEF**

19   Wherefore, the Plaintiffs demand judgment against the Defendants and prays for the court

20   to award for the following damages so that the Plaintiffs may recapture its losses of:

21   1.    Compensatory Damages in an amount to be proven at trial by a jury;

22   2.    Incidental Damages plus applicable interest, according to proof;

23   3.    Consequential Damages plus applicable interest, according to proof;

24   4.    Pre and Post Judgment interest according to proof; and

25   5.    Any such other and further legal and/or equitable relief as the Court deems just and

26         proper.

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880

DATED: November 16, 2017

MALTZMAN & PARTNERS

BY: *s/ Jeffrey B. Maltzman*

Jeffrey B. Maltzman, WSBA #52051 & CASB #131758
Edgar R. Nield, WSBA # & CASB #135018
MALTZMAN & PARTNERS, P.A.
Physical Address:     506 Second Avenue, Suite 1400
                      Seattle, WA 98104
**Mailing Address:     679 Encinitas Boulevard, Suite 201
                      Encinitas, CA 92024**
Telephone: (760) 942-9880
Facsimile:  (760) 942-9882
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com

Attorneys for Plaintiffs,
HOLLAND AMERICA LINE, N.V. d/b/a HOLLAND
AMERICA LINE, N.V., L.L.C., SEABOURN CRUISE
LINE, LTD. and PRINCESS CRUISE LINES, LTD., d/b/a
PRINCESS CRUISES

**MALTZMAN & PARTNERS**
jeffreym@maltzmanpartners.com
edn@maltzmanpartners.com
679 Encinitas Blvd. Ste. 201
Encinitas, CA 92024
(760)942-9880