UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOLLAND AMERICA LINE, N.C. d/b/a HOLLAND AMERICA LINE, N.V., LLC, *et al.*, | CASE NO. C17-1726-JCC |
| Plaintiffs, | ORDER |
| v. | |
| ORIENT DENIZCILIK TURIZM SANAYI VE TICARET, A.S. d/b/a SEA SONG TOURS, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants Orient Denizcilik Turizm Sanayi VE Ticaret, A.S. ("Orient Turkey"), Orient America, Inc. ("Orient America"), and Karen Federko Sefer's ("Sefer") (collectively "Sea Song") motion to dismiss Plaintiffs' First Amended Complaint (Dkt. No. 33). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

I.     **BACKGROUND**

This case follows the termination of a business relationship between Plaintiffs—Holland America Line, N.V. ("Holland America"), Princess Cruise Lines, Ltd. ("Princess"), and Seabourn Cruise Line, Ltd. ("Seabourn")—and Sea Song. (*See generally* Dkt. No. 25.) Plaintiffs

are cruise ship operators under common ownership. (*Id.* at 2.). They had a long-standing relationship with Sea Song to provide shore excursions and shopping experiences to passengers at Plaintiffs' Turkish ports of call. (*See generally id.*) At issue is Sea Song's compliance with the terms of the parties' alleged 2015 shopping marketing agreement. (*Id.* at 16–17.) In general, the annual shopping marketing agreements worked as follows: Sea Song would select a group of recommended merchants and prepare promotional materials[1] directing sales to those merchants, Plaintiffs would distribute the materials to their passengers, and Sea Song would pay a guaranteed amount plus a percentage of sales to Plaintiffs. (*Id.* at 12–14.) The parties first entered into this arrangement in 2005. (*Id.*)[2]

Plaintiffs allege that throughout the 2015 cruise season they distributed Sea Song's promotional materials and directed their passengers to Sea Song's merchants and Sea Song provided periodic accountings of resulting sales. (*Id.* at 9–15.) But, according to Plaintiffs, Sea Song failed to pay after learning that they were outbid for Plaintiffs' 2016 Turkish business. (*Id.*) Plaintiffs bring breach of contract and, in the alternative, unjust enrichment claims against Sea Song and Does 1–20. (*Id.* at 18–24.) They also bring a claim labeled alter ego liability and piercing the corporate veil solely against Defendants Sefer and Does 1–20. (*Id.* at 24.)

Complicating this case is the manner in which the parties memorialized the terms of their annual shopping marketing agreements. They would typically negotiate the agreements before each season started, but hold off on finalizing the memorializing documents until after the season commenced. (Dkt. No. 25 at 14, 17); (*see* Dkt. No. 25-2 at 7, 13, 19, 25, 33) (executed agreements for the 2005–2008 and 2013 cruise seasons). In some years, including the 2015 season, the parties failed to execute memorializing documents at all. (*See* Dkt. Nos. 1-1, 25-3)

---

[1] The materials included shopping maps and videos highlighting Sea Song's recommended merchants and their wares. (Dkt. No. 25 at 14.)

[2] The initial agreements were between Holland America's predecessor, on its own behalf, and Sea Song. (*See* Dkt. No. 25-2 at 2–27.) The alleged 2015 agreement was between Holland America, on behalf of all Plaintiffs, and Sea Song. (Dkt No. 36 at 12) (*see* Dkt. No. 25-3 at 2–6.)

(unexecuted documents for the 2014 and 2015 seasons).

After Sea Song did not make payment for 2015, Plaintiffs first attempted to arbitrate the matter pursuant to an arbitration clause contained in the unexecuted agreement. (Dkt. No. 33 at 6); (*see* Dkt. No. 25-3 at 5). Sea Song refused to participate, asserting that there was no binding written agreement containing an arbitration provision. (Dkt. No. 36-1 at 3–4.) In response, Plaintiffs filed suit in the District Court for the Central District of California, which dismissed the matter based on a lack of personal jurisdiction. *See Holland America Line, N.V. v. Orient Denizcilik Turizm*, No. C17-1617-R, slip op. (C.D. Cal. Sept. 4, 2017). Plaintiffs then filed suit in this Court, adding Orient America as a defendant. (*See generally* Dkt. No. 25.)

Sea Song again moves to dismiss on multiple grounds: a lack of subject matter jurisdiction, a lack of personal jurisdiction, *forum non conveniens*, the international abstention doctrine, the failure to state claims against Sefer and Orient America, and, finally, that Plaintiffs' cause of action for alter ego and piercing the corporate veil is not a valid stand-alone cause of action. (Dkt No. 33 at 7–30.)

## II.    DISCUSSION

For the reasons described below, the Court DISMISSES all claims against Orient America and Sefer personally, as well as Plaintiffs' cause of action for alter ago and piercing the corporate veil. Plaintiffs' remaining claims against Orient Turkey and Does 1–20 survive.

### A.    Subject Matter Jurisdiction

This is a Court of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Jurisdiction is a threshold separation of powers issue. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Plaintiffs allege that the Court has subject matter jurisdiction either as an admiralty action, 28 U.S.C. § 1333, or based on diversity, 28 U.S.C. § 1332. (Dkt. Nos. 25 at 3–4, 36 at 32–34.) While the Court is skeptical of Plaintiffs' admiralty argument, it need not address it, as the Court is satisfied that it has subject matter jurisdiction based upon diversity. It is undisputed that the amount in controversy exceeds $75,000. *See* 28

U.S.C. § 1332(a); (*see generally* Dkt. Nos. 33, 37). In addition, Defendants are completely

diverse from Plaintiffs. *See* 28 U.S.C. § 1332(a)(1), (2). Holland America is a Curacao

corporation and Seaborn is a Bermuda corporation. (Dkt. Nos. 25 at 2, 33 at 3.) Both are

headquartered in Seattle. (Dkt. No. 25 at 2.) Princess is a Bermuda corporation headquartered in

Santa Clarita, California. (*Id.*) Orient Turkey is a Turkish corporation headquartered in Turkey.

(Dkt. No. 34 at 2.) Orient America is a Massachusetts corporation headquartered outside of

Washington or California. (*Id.*) Sefer is a Turkish citizen who resides in Turkey. (*Id.* at 1.) The

citizenship of Does 1–20 is unknown, but they are not citizens or residents of California or

Washington. (*Id.*)[3] Accordingly, Sea Song's motion to dismiss based on a lack of subject matter

jurisdiction is DENIED.

### B.    Personal Jurisdiction

To establish personal jurisdiction, the requirements of both the state's long-arm statute

and federal due process must be satisfied. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

797, 800 (9th Cir. 2004). Because Washington's long-arm statute, Wash. Rev. Code § 4.28.185,

extends to the limits of federal due process, the only issue is whether federal due process

requirements are met. *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989). Plaintiffs

bear the burden of making a prima facie showing of jurisdictional facts. *Schwarzenegger*, 374

F.3d at 800. Additionally, because Sea Song raises a challenge to personal jurisdiction,

Plaintiffs' claims cannot rest on bare allegations. *Amba Marketing Systems, Inc. v. Jobar Int'l,

Inc.*, 551 F.2d 784, 787 (9th Cir.1977). They must come forward with facts, by affidavit or

otherwise, to meet their burden. *Id.*

For the Court to exercise personal jurisdiction over a nonresident defendant, that

defendant must have at least "minimum contacts" with Washington such that the exercise of

---

[3] The Court may revisit this determination once the identity of Does 1–20 is clear. *See* Fed R. Civ. P. 12(h)(3) ("If the Court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). Such minimum contacts can be established through the application of either general or specific jurisdiction. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

### 1. General Jurisdiction

This Court has general jurisdiction over defendants whose Washington contacts are so "continuous and systematic as to render them essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011). Contacts are continuous and systematic when they are "so substantial and of such a nature as to justify suit against [a defendant] on causes of action arising from dealings entirely distinct from those activities." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011).

"'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear*, 564 U.S. at 924). Sefer is a Turkish citizen who resides in Turkey. (Dkt. No. 25 at 1.) The Court lacks general jurisdiction over her personally.

For a corporation, the Court looks to the state of incorporation and where the entity is headquartered. *Daimler*, 571 U.S. at 137. A corporation may also be considered "at home" outside of those states, but only in "exceptional case[s]." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Neither Orient Turkey nor Orient America are incorporated or headquartered in Washington. *See supra* Part II.A. However, Plaintiffs suggest Sea Song's Washington activities are sufficiently continuous and systematic as to render it at home in Washington, thereby making this an exceptional case. (Dkt. No. 25 at 4.) In support, Plaintiffs reference the occasional face-to-face meetings between Sea Song's and Plaintiffs' representatives in Washington, along with a myriad of telephonic and electronic contacts between the two. (*See id.*

at 4–12.) This is insufficient to establish that Sea Song was "essentially at home" in Washington. *Daimler AG*, 571 U.S. 138–39. General jurisdiction does not apply to Sea Song.

## 2. Specific Jurisdiction

The Court can exercise specific jurisdiction over a nonresident defendant for conduct that "create[s] a substantial connection" with Washington. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). This can include "prior negotiations and contemplated future consequences" from contractual dealings. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). Correspondingly, this Court may exercise specific jurisdiction over Sea Song if: (1) it purposefully availed itself of the privilege of consummating a transaction in Washington, thereby invoking the benefits and protections of the state's laws; (2) Plaintiffs' claim arises out of or relates to Sea Song's Washington-related activities; and (3) the exercise of jurisdiction is reasonable. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citing *Schwarzenegger*, 374 F.3d at 802). Plaintiffs must establish the first two elements. *Id*. If established, Sea Song must show why the exercise of jurisdiction would not be reasonable. *Id*.

### i. *Prongs One and Two*

Sea Song does not dispute that its representatives had frequent electronic and telephonic communications with Plaintiffs' Seattle representatives. (*See* Dkt. Nos. 33 at 10–15, 37 at 4–9.) Nor could they, as this was key to their argument supporting dismissal in California. (*See* Dkt. No. 36-4 at 3–4.) Further, Sea Song concedes that its representatives had *some* face-to-face meetings with Plaintiffs in Seattle. (*See* Dkt. Nos. 33 at 10–15, 37 at 4–9.) At issue is the extent and import of the meetings.

Plaintiffs provide testimony that the face-to-face meetings occurred on a regular basis. (*See* Dkt. No. 36-2 at 2–7) (declaration from Ellen Lynch, Plaintiffs' Senior Director for Shore Excursions, testifying that Sefer and other Sea Song representatives "would visit my office in Seattle every year or two throughout the period 2005 through about 2015," made "multiple trips

and paid to attend special Shore Excursion Operator Conferences" including ones in Seattle in 2010 and 2013, and separately hosted pre-planned lunches and dinners "from 2005 through 2015" at various Seattle locations including the "Waterfront, Steelhead Diner, and Daniels" in order to "pitch proposed additional excursions or other business proposals" to Ms. Lynch); (Dkt. No. 36-3 at 2–5) (declaration from Mark Barnard, Plaintiffs' Senior Manager for Onboard Revenue, indicating that "[t]hroughout the years 2005 through 2015, Defendants repeatedly, frequently, and persistently traveled to Seattle to visit me and other employees in Plaintiffs' Seattle offices for the purposes of soliciting, supporting, and expanding" the shore excursion and shopping businesses, which Mr. Barnard describes as "interconnected because the shopping opportunities are offered as part of the shore excursion program"). Testimony provided by Sea Song does not rebut this assertion.[4] Ms. Sefer indicates that she traveled to Seattle "on a handful of occasions, and on some of those occasions ha[s] met with one or more representatives of the Cruise Lines." (Dkt. No. 34 at 2.) However, she contends that she has not traveled to Seattle "at any time from 2014 through the present." (Dkt. No. 34 at 2.) It is on this point that Sea Song rests its argument.

Specifically, Sea Song argues that Plaintiffs fail to establish the second prong because there were no face-to-face dealings in 2015 and the alleged 2015 shopping agreement is severable from prior agreements. (Dkt. Nos. 33 at 12–15, 37 at 4–10.) Therefore, Sea Song asserts, Plaintiffs claims do not arise out of Sea Song's Washington-based activities. (*Id.*) This is not a persuasive argument. The parties had a long-standing relationship regarding the provision of shore excursions and shopping experiences. Past contacts between parties are relevant if they "inform the court of the economic substance of the contract" at issue. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997). Here, the alleged 2015 shopping marketing agreement

_____

[4] Further, even if it did, "[c]onflicts between parties over statements contained in affidavits must be resolves in the plaintiff's favor." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

is not materially different than past agreements, including the one executed in 2013.[5] As a result, the Court finds that Sea Song purposefully availed itself of the privilege of consummating agreements in Washington and that Plaintiffs' claims regarding the alleged 2015 agreement arose out of this activity.

### ii. Prong Three

Sea Song must demonstrate why it would be unreasonable for the Court to exercise personal jurisdiction in this instance. *Schwarzenegger*, 374 F.3d at 802. To determine reasonableness, the Court weighs the following non-dispositive factors: "(1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993). While not definitive, an analysis of the factors indicates that Sea Song has failed to make the required demonstration.

### a. Purposeful injection

This factor "parallels the question of minimum contacts," which the Court has concluded Plaintiffs have established. *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 852 (9th Cir. 1993). Sea Song representatives traveled to Washington to meet with Plaintiffs' representatives in order to market services and negotiate agreements, as well as to attend various trade shows. (Dkt. No. 25 at 3–12.) They also traveled to Washington to market their services to

---

[5] In both instances, Sea Song was to select local merchants, prepare materials promoting those merchants, and to resolve all passenger complaints regarding merchandise purchased from those merchants. (Dkt. Nos. 25-2 at 28–29, 25-3 at 2–3.) Plaintiffs agreed to distribute the promotional materials, to highlight the recommend merchants, and not to promote other merchants in those ports. (Dkt. Nos. 25-2 at 30, 25-3 at 4.) Sea Song would pay Plaintiffs a guaranteed amount and a percentage of sales if over the guaranteed amount. (Dkt. Nos. 25-2 at 29, 25-3 at 3.)

other Washington-based cruise lines. (*Id*. at 6.) This factor weighs in favor of personal jurisdiction.

### b. Burdens of litigating

The Court is to examine the burden on Sea Song "in light of the corresponding burden" on Plaintiffs, in the context of "modern transportation and communications." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986). Sea Song suggests that Plaintiffs' burden litigating in Turkey would be far less than Sea Song's burden litigating in Washington, as relevant evidence is located in Turkey and Plaintiffs have Turkish ports of call, whereas Sea Song has no operations in Washington. (Dkt. Nos. 33 at 16–17, 37 at 12.) But the dispute centers around the failure to make payment on an alleged agreement negotiated in Washington. (*See generally* Dkt. No. 25.) Many of the witnesses who would be providing testimony on the issue are based in Seattle. (*See* Dkt. Nos. 36-2 at 4, 36-3 at 2, 36-4 at 3.) Further, little if any evidence need come from Turkey, other than testimony from Sea Song representatives who have, in the past, regularly traveled to Washington. (*See* Dkt. Nos. 34 at 2–3, 36-2 at 3, 36-3 at 3.) The accounting for the transactions at issue has already been provided to Plaintiffs. (*See* Dkt. No. 36-9 at 33.) This factor weighs in favor of personal jurisdiction.

### c. Conflict with Turkish sovereignty

Courts should be cautious in extending personal jurisdiction over foreign corporations. *See Asahi Metal Industries v. Superior Court of Solano Cty.*, 480 U.S. 102, 107 (1987). Since Orient Turkey is incorporated and registered in Turkey and Sefer is a Turkish citizen living in Turkey, this Court's exercise of jurisdiction would necessarily conflict with that country's sovereignty. This factor weighs against personal jurisdiction.

### d. Washington's interest in adjudicating suit

While Plaintiffs are not Washington citizens, two of them are headquartered here, as are other cruise lines. (Dkt. No. 25 at 2, 6.) Washington has an interest in ensuring the contracts

negotiated by foreign businesses with such cruise lines are properly enforced. This factor weighs in favor of personal jurisdiction.

### e. Efficient judicial resolution

Normally, the most efficient forum is the site where the evidence is located. *Pac. Atl. Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1331 (9th Cir. 1985). As described above, *see supra* Part II.B.2.ii.b., evidence is located primarily in Washington. This factor weighs in favor of personal jurisdiction.

### f. Convenience and effectiveness of relief for Plaintiff

Washington represents a convenient forum for Plaintiffs to obtain complete relief. It would be inefficient and costly for Plaintiffs to litigate their contract-based claims in Turkey. The Court also notes that Washington is the second U.S. jurisdiction in which Plaintiffs have attempted to bring their lawsuit. *See Holland America Line, N.V. v. Orient Denizcilik Turizm*, No. C17-1617-R, slip op. (C.D. Cal. Sept. 4, 2017). Continued delay could prevent Plaintiffs from obtaining relief. This factor weighs in favor of personal jurisdiction.

### g. Existence of alternative forum

Plaintiffs "bear[] the burden of proving the unavailability of an alternative forum." *Core-Vent Corp.*, 11 F.3d at 1490. As more fully described below, *see infra* Part II.C., an alternative forum may exist in Turkey. (Dkt. No. 34 at 3, 4, 8–59.) Plaintiffs have not indicated why they could not bring counter-claims to the existing Turkish claims brought by Sea Song that would replicate the claims they bring here. (*See generally* Dkt. No. 36 at 21–22.) This factor weighs against personal jurisdiction.

The balance of factors indicates that this Court's exercise of personal jurisdiction would be reasonable. Accordingly, Sea Song's motion to dismiss based on a lack of personal jurisdiction is DENIED.

//

//

### C. *Forum Non Conveniens*

For the Court to dismiss on grounds of *forum non conveniens,* Sea Song must make a "clear showing of facts which . . . establish such oppression and vexation of [Sea Song] as to be out of proportion to [Plaintiffs'] convenience, which must be shown to be slight or nonexistent." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002). Sea Song fails to make this showing.

Specifically, Sea Song must show: (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors "strongly favor" dismissal. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). "An alternative forum ordinarily exists when defendants are amenable to service of process in the foreign forum." *Id.* Orient Turkey has already brought a Turkish action against Plaintiffs relating to the termination of their business arrangement, and Plaintiffs have been served in that action. (Dkt. Nos. 33 at 21, 36 at 20–22); (*see* Dkt. No. 34 at 3–4, 7–66.) Therefore, Turkey may be an adequate forum. Regardless, the balance of public and private interests do not favor dismissal.

Private interest factors include the ease of access to evidence, the availability of witnesses, and practical factors favoring expeditious and inexpensive travel. *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 769–70 (9th Cir. 1991). Defendants aver that these factors all favor dismissal. (Dkt. No. 33 at 21) But they provide inadequate facts to support this assertion. As discussed above, *see supra* Part II.2.(ii).b., the majority of the witnesses who would provide testimony on the nature of the agreement between the parties are in Seattle. (*See* Dkt. Nos. 36-2 at 4, 36-3 at 2, 36-4 at 3.)[6] Further, little if any evidence need come from Turkey. The accounting for the sales at issue has already been provided to Plaintiffs (*see* Dkt. No. 36-9 at 33) and if additional accounting need be produced, it could easily be transmitted to Washington.

---

[6] The Court views Defendants' references to required testimony from Turkish merchants (*see* Dkt. Nos. 33 at 21–22, 37 at 12) as a red herring. The agreement at issue was between Plaintiffs and Sea Song—not the local merchants. (*See generally* Dkt. No. 25.)

Lastly, while Ms. Sefer indicates that her travel to Washington would be a hardship (Dkt. No. 34 at 2), the Court views the assertion with skepticism, given her previous travels throughout the United States to seek business opportunities with Plaintiffs and others. (Dkt. Nos. 34 at 2–3, 36-2 at 3, 36-3 at 3).

Public interest factors include "court congestion, local interest in resolving the controversy, and preference for having a forum apply a law with which it is familiar." *Dole Food Co., Inc.*, 303 F.3d at 1119. Defendants provide inadequate facts to support a favorable determination by the Court on these factors and, most importantly, give short shrift to the import of the choice-of-law provisions contained within the marketing agreements that mandate the application of U.S. law.[7] (*See generally* Dkt. Nos. 33 at 22, 37 at 12–13.)

Sea Song fails to carry the heavy burden to support dismissal on *forum non conveniens* grounds. Accordingly, Sea Song's motion to dismiss based on *forum non conveniens* is DENIED.

### D.    International Abstention Doctrine

"[A]bsent 'exceptional circumstances,' federal courts have an obligation to exercise their jurisdiction concurrently with other courts," including foreign courts. *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1194–95 (9th Cir. 1991) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)). However, under the *Colorado River* doctrine, this Court may stay or dismiss a case already pending in a foreign court in the interest of international comity, judicial efficiency, and fairness to the litigants. 424 U.S. at 818. In deciding whether to apply *Colorado River*, the Court considers the following factors: (1) whether either court has assumed jurisdiction over a *res*; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums

---

[7] The unexecuted 2015 agreement includes a choice-of-law provision calling for the application of California law and the most recent signed agreement, from 2013, includes a choice-of-law provision calling for the application of Washington law. (See Dkt. Nos. 25-2 at 31, 25-3 at 5.)

obtained jurisdiction; (5) which forum's law controls; and (6) whether the other forum's proceeding is adequate to protect the parties' rights. *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1158 (C.D. Cal. 2005), *aff'd sub nom. Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014) (citing *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir.1989)). However, "'[o]nly the clearest of justifications will warrant dismissal'" and "'[a]ny doubt as to whether a factor exists should be resolved against a stay, not in favor of one.'" *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) (quoting *Colorado River*, 424 U.S. at 819). Here, the factors do not support a dismissal or a stay.

### i. Jurisdiction over a Res

This case does not involve a property dispute. This factor is neutral.

### ii. Relative Convenience of the Forums

As described above, *see supra* Parts II.B.2.ii.b., e., f., and II.C., this factor generally weighs against abstention.

### iii. Desirability of Avoiding Piecemeal Litigation

Plaintiffs may be able to bring their current claims as counter-claims in the ongoing Turkish litigation. *See Mercier v. Sheraton Int'l., Inc.*, 981 F.2d 1345, 1351-52 (1st Cir. 1992) (noting that contract-related claims are cognizable in Turkish courts). This factor generally weighs in favor of abstention.

### iv. The Order in Which the Forums Obtained Jurisdiction

Orient Turkey filed two suits in a Turkish commercial court: on November 11, 2016 and on December 2, 2016. (Dkt. No. 34 at 3–4.) Plaintiffs did not file their suit until February 28, 2017, *Holland America Line, N.V. v. Orient Denizcilik Turizm*, No. C17-1617-R, Dkt. No. 1 (C.D. Cal. 2017), and following dismissal in California, filed suit in this Court (Dkt. No. 1). But that does not tell the full story. First, Plaintiffs issued a demand letter in this matter on August 15, 2016 and filed suit in the District Court for the Northern District of California shortly after Sea Song's lengthy delay in informing them that they would not agree to arbitration. (Dkt. No.

36-1 at 2–3); (*see* Dkt. No. 36-10) (e-mail exchange regarding arbitration). Second, Plaintiffs were not served in the Turkish proceedings until April 30, 2018, well after they filed suit in this matter. (Dkt. No. 34 at 3.) Third, one of the cases filed in Turkish commercial court has been dismissed and/or transferred to Istanbul's commercial maritime court. (Dkt. No. 34 at 4.) Sea Song's claims are not comparable to Plaintiffs'. Sea Song's relate to what they allege was the premature termination of the overall business relationship. (Dkt. No. 36 at 22–23.) Plaintiffs' relate to Sea Song's breach of an existing agreement after Plaintiffs fully performed. (*See generally* Dkt. No. 25.) Therefore, the Court views this factor as neutral.

> ### v.    Which Forum's Law Controls

As described above, *see supra* Part II.C. n. 7, the law of California or Washington may control. Therefore, this factor generally weighs against abstention.

> ### vi.    Adequacy of Turkish Proceeding

This factor is mixed. Turkey has been in a state of emergency, although Plaintiffs present evidence suggesting that state was recently lifted. (Dkt. No. 39 at 8.) Whether a Turkish court would allow Plaintiffs' counter-claims is uncertain. Further, it is not clear what law a Turkish court would apply. In addition, whether witnesses located in Washington would be able and willing to travel to Turkey to testify is unclear. (*See* Dkt. No. 36 at 29.) This factor generally weighs against abstention.

Neither a stay nor dismissal is warranted. Accordingly, Sea Song's motion to dismiss or stay this matter pending the outcome of Sea Song's Turkish proceedings is DENIED.

### E.    Failure to State Claims against Sefer and Orient America

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To grant a motion to dismiss, the Court must be able to conclude that the moving party is entitled to judgment as a matter of law, even after accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

However, to survive a motion to dismiss, a plaintiff must cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotations omitted). Although the Court must accept as true a complaint's well-pleaded facts, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Vasquez v. L.A. County,* 487 F.3d 1246, 1249 (9th Cir. 2007). Plaintiffs name both Orient America and Sefer as Defendants, but fail to plead allegations with sufficient particularity to support claims against them.

As to Sefer, Plaintiffs allege that she took actions "individually" that harmed Plaintiffs, but Plaintiffs provide no plausible factual allegations to suggest how this occurred. (Dkt. No. 25 at 26.) It appears to the Court that all allegations directed at Sefer relate to acts taken on behalf of Sea Song. As to Orient America, Plaintiffs plead common ownership and management with Orient Turkey. (*Id*. at 2–3.) Without more, this is not a basis to ascribe liability to Orient America. Accordingly, Sea Song's motion to dismiss all claims against Orient America and Sefer is GRANTED. The claims are dismissed without prejudice and with leave to amend.[8]

### F.    Alter Ego / Piercing the Corporate Veil

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Sea Song moves to dismiss Plaintiffs' final cause of action, titled "Alter Ego Liability and Piercing the Corporate Veil," on the basis that this is not a stand-alone case of action. (Dkt. No. 33 at 26) (quoting Dkt. No. 25 at 24.) Plaintiffs bring this claim solely against Sefer and Does 1–20. (Dkt. No. 25 at 24–26). Plaintiffs make a variety of allegations to support this claim, including that Orient Turkey failed to maintain proper finances and corporate formalities and that Sefer paid personal expenses out of Orient Turkey's funds. (*Id*. at 25.) But alter ago and piercing the corporate veil are "a means

---

[8] Leave to amend should be freely given when justice so requires unless it would be futile. Fed. R. Civ. P. 15(a)(2); *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).

of imposing liability for an underlying cause of action and [are] not a cause of action in and of [themselves]." *Loc. 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999). Accordingly, Sea Song's motion to dismiss Plaintiffs' final cause of action is GRANTED. The claim is dismissed without prejudice and with leave to amend.

**III.    CONCLUSION**

For the foregoing reasons, Sea Song's motion to dismiss (Dkt. No. 33) is GRANTED in part and DENIED in part. The Court ORDERS as follows:

1)  All claims against Sefer and Orient America are DISMISSED without prejudice;

2)  Plaintiffs' cause of action for alter ego liability and piercing the corporate veil is DISMISSED without prejudice; and

3)  Within fourteen (14) days of this order, Plaintiffs may AMEND their First Amended Complaint to (a) support allegations of wrongdoing by Sefer in her individual capacity and Orient America in its corporate capacity and to (b) incorporate their allegations of alter ego liability and piercing the corporate veil into the surviving causes of action. No further amendment may be made without additional leave from the Court.

DATED this 7th day of August 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE